[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a motion filed by Defendants/Third-Party Plaintiffs John W. Kennedy Co. ("Kennedy Co." or "the Corporation") and Jo-Anne C. Kennedy ("Jo-Anne Kennedy" or "Jo-Anne") for partial summary judgment as to Count III of the Plaintiff, Jessie L. Lynch's ("Jessie Lynch" or "Jessie") Verified Complaint. Count III is a derivative claim brought by Jessie Lynch on behalf of Kennedy Co. to recover alleged excessive and unauthorized compensation and benefits paid over the last 15 years, from 1989 until the present, to Jo-Anne Kennedy in her capacity as Chief Executive Officer and Treasurer of Kennedy Co.
 FACTS AND TRAVEL
The Plaintiff filed a verified complaint, and also filed two affidavits in opposition to the motion for partial summary judgment. In examining the motion for summary judgment, the Court must view the facts in the light most favorable to the party opposing the motion. Under that standard, the facts pertinent to this motion are as follows.
Kennedy Co. is a Rhode Island corporation formed in 1966 and engaged in the distribution of equipment and products related to the petroleum industry. Plaintiff Jessie Lynch owns 20 shares of stock of Kennedy Co., or 20 percent of the Corporation's issued and outstanding stock, and Defendant Jo-Anne Kennedy owns 80 shares, or 80 percent of the Corporation's issued and outstanding stock.
In 1989, Jo-Anne Kennedy became the CEO and Treasurer of Kennedy Co. and has held these positions until the present time. As CEO and Treasurer, Jo-Anne was responsible for the day-to-day management of Kennedy Co. Prior to 1989, Kennedy Co.'s CEO was the late John W. Kennedy Jr., Jo-Anne Kennedy's husband and Jessie Lynch's brother. Jo-Anne was initially paid the same base salary as the former CEO, $150,000, and her base salary is currently set at $200,000 per year. From 1989 until 2003, the directors of Kennedy Co. were Jo-Anne Kennedy and John J. Lynch ("Jack" or "Lynch"), Jessie's husband. Presently, the Board of Directors consists of Jo-Anne Kennedy, Jack Lynch, and John W. Kennedy III, Jo-Anne's son. Although Jack Lynch remains a director, he is no longer an employee of the Corporation, as he retired in June 2002 after 35 years of employment.
According to Jo-Anne Kennedy, she received a discretionary bonus during her first year as the Corporation's CEO and Treasurer in the amount of $81,000. From 1990 to the present, Jo-Anne in addition to her base salary, received a discretionary bonus each year such that her total compensation on an annual basis ranged from $406,000 in fiscal year 1990, to a total of $641,000 in fiscal year 1997. In fiscal year 2003 she received total compensation of $308,000.
A dispute exists as to whether Jo-Anne Kennedy's compensation was approved or ratified by the Board of Directors. Jo-Anne argues that each year from 1989 through 2002 the Board of Directors reviewed and approved payroll census data for each company employee, including Jo-Anne Kennedy, in determining whether and to what extent to make and allocate contributions to the Pension and Profit Sharing Plans of the Company.See E. Colby Cameron Aff. ¶ 1(c). Plaintiff, to the contrary, has submitted an affidavit stating that the Board of Directors neither established a base salary for the position of CEO, nor authorized the Company to pay any discretionary bonus to Jo-Anne during the relevant period. See Jessie L. Lynch Aff. ¶¶ 3, 4; Pl.'s Verified Complaint, ¶ 19. No corporate minutes have been produced by either side to evidence the Board's actions, if any, with regard to the compensation Jo-Anne Kennedy was authorized to receive.
On June 20, 2003, Jessie Lynch filed the underlying complaint. The Plaintiff's claim for derivative relief contained in Count III is made pursuant to Super. R. Civ. P. 23.1 and Gen. Laws 1956 § 7-1.1-43.1. The Defendants agree that Count III is a claim belonging to Kennedy Co. and, for purposes of this motion, have conceded compliance with the procedural requirements of Rule 23.1.
In response to the underlying complaint, the Defendants' have, interalia, raised the affirmative defenses of statute of limitations and laches. It is on the basis of those defenses, as well as the business judgment rule and the doctrine of quasi-contract, that the Defendants move for summary judgment as to Count III of the verified complaint.
 STANDARD OF REVIEW
Summary judgment is an extreme remedy and should be applied cautiously. Rotelli v. Catanzaro, 686 A.2d 91 (R.I. 1996). The purpose of the summary-judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues. Id (citing IndustrialNat'l Bank v. Peloso, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979)). In a summary judgment proceeding, the moving party must demonstrate that he or she is entitled to judgment as a matter of law and that no genuine issues of material fact exist. Palmisciano v. Burrillville Racing Ass'n,603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v. State, 427 A.2d 338
(R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)); Super. R. Civ. P. 56. In such a proceeding, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion."Palmisciano, 603 A.2d at 320 (citing Lennon v. MacGregor, 423 A.2d 820
(R.I. 1980)). As a result, the sole function of a trial justice when ruling on a summary judgment motion is determining whether any issues of material fact exist. Industrial Nat'l Bank, 121 R.I. at 307,397 A.2d at 1313 (citing Rhode Island Hosp. Tr. Nat'l Bank v. Boiteau,119 R.I. 64, 66, 376 A.2d 323, 324 (1977)).
Furthermore, when "an examination of pleadings, affidavits, admissions, answers to interrogatories, and other similar matters, viewed in a light most favorable to the opposing party, reveals no such issue, then the suit is ripe for summary judgment." Rhode Island Hosp. Tr. Nat'lBank, 119 R.I. at 66, 376 A.2d at 324(citations omitted); see alsoRotelli 686 A.2d at 91. The opposing party in a summary judgment motion "will not be allowed to rely upon mere allegations or denials in their pleadings." Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998). Rather, the opposing party, by affidavits or otherwise, has an affirmative duty to set forth specific facts demonstrating the existence of a genuine issue of material fact. Id (citing St. Paul Fire MarineIns. Co. v. Russo Brothers, Inc., 641 A.2d 1297, 1299 (R.I. 1994)).
 ANALYSIS
Statute of Limitations
Both parties agree that pursuant to Gen. Laws 1956 § 9-1-13(a), the applicable statute of limitations for Count III is ten years. The Defendants argue that the cause of action set forth in Count III accrued in 1989, and the Plaintiff's complaint was not filed until June 20, 2003, more than ten years later. Accordingly, they argue that Count III should be time barred in its entirety.
The Plaintiff contends that pursuant to the concealment provision set forth in Gen. Laws § 9-1-20, the accrual of her claims was tolled, such that a cause of action could not accrue until 2002, the year when Jessie allegedly first learned of Jo-Anne's annual compensation package after retaining counsel and issuing a stockholder statutory request for information.
Section 9-1-20, the statute setting forth the time of accrual for a concealed cause of action, reads:
 "If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence." Section 9-1-20.
To prove fraudulent concealment of a cause of action sufficient to toll the running of the limitations period, the plaintiff must show that the defendant: (1) made an actual misrepresentation of fact and (2) in making such misrepresentation, the defendant fraudulently concealed the existence of a cause of action. Kelly v. Marcantonio, 187 F.3d 192, 200
(1st Cir. 1999) (interpreting § 9-1-20). A defendant's silence or failure to volunteer information does not represent an "actual misrepresentation." Smith v. O'Connell, 997 F.Supp. 226, 238 (D.R.I. 1998) (quoting Kenyon v. United Electric Railways Co., 51 R.I. 90, 94,151 A. 5, 8 (1930). There must be "some express representation or other affirmative conduct amounting in fact to such a representation which could reasonably deceive another and induce him to rely thereon to his disadvantage." Smith, 997 F.Supp. at 238 (quoting Caianiello v.Shatkin, 78 R.I. 471, 82 A.2d 826, 829 (R.I. 1951)). Further, to avoid the statute of limitations, the plaintiff must show not only fraud, but that the alleged statements can be characterized as continued misrepresentations. Curtis v. Metcalf, 259 F.961, 963 (D.R.I. 1919) (finding that a suit against corporate directors for mismanagement was time-barred where causes of action should have been discovered through the exercise of reasonable diligence in the ordinary course of business). A plaintiff must exercise reasonable diligence and "the means of knowledge are the same thing in effect as knowledge itself." Id
(citations omitted).
The Plaintiff relies upon two alleged statements to demonstrate a concealed cause of action — a statement made in 1989 wherein Jo-Anne Kennedy allegedly represented to Jack Lynch that the amount of her compensation would continue at the same 125 % ratio to his compensation that had been maintained in the years prior to 1989 by the former CEO; and a second statement allegedly made to Jack Lynch when he requested corporate compensation and salary records, and was told by Jo-Anne Kennedy that the information was "none of his business."
Even assuming that the statements as alleged by Plaintiff were in fact made, these two statements, made in 1989, cannot be relied upon as continuous misrepresentations that fraudulently concealed a cause of action. Accepting as true for purposes of this motion that the Plaintiff was given false information about Jo-Anne's salary in 1989, as a minority shareholder of the corporation the Plaintiff had a statutory right to demand access to the corporate books and records to verify the representation received by her husband as a member of the Board. See
Gen. Laws 1956 § 7-1.1-46. If the Lynch family decided to accept the representation of Jo-Anne and not demand access to the books after receiving a response that the information was "none of your business," it cannot be said that they were induced by a fraudulent concealment not to assert a timely claim. See Kelly, 187 F.3d at 200. In the absence of fraud, "neither the ignorance of a person of his right to bring an action nor the mere silence of a person liable to the action prevents the running of the statute of limitations." Kenyon v. United Elec. Ry. Co.,51 R.I. 90, 94, 151 A. 5, 7 (1930).
Moreover, to avoid the statute of limitations, the Plaintiff must demonstrate that through the exercise of reasonable diligence, the plaintiff could not have discovered the defendant's wrongful conduct. SeeCurtis, 259 F. at 963. Here, the Defendants have provided evidence revealing that, at a minimum, Jo-Anne Kennedy's annual compensation data was listed each year on the Corporation's tax returns. The Plaintiff has failed to set forth any facts in her pleadings, affidavits, admissions, or her answers to interrogatories, creating any issue of material fact as to why Jo-Anne's total compensation package, through the exercise of reasonable diligence, could not have been discovered prior to 2002 when the Plaintiff retained counsel and issued a stockholder statutory request for the information. This Court will additionally note that the only misrepresentation alleged by the Plaintiff was made by Jo-Anne Kennedy to Jack Lynch, who is not a party to this action. Thus, the Plaintiff has failed to offer any facts whatsoever as to how Jo-Anne Kennedy fraudulently, by actual misrepresentation, concealed from the Plaintiff the existence of the Corporation's derivative claim against Jo-Anne Kennedy.
Since statutory tolling is not available to the Plaintiff, the question the Court must determine, therefore, is when the cause of action stated in Count III accrued for limitations purposes. The Defendants allege that the base salary paid to the Corporation's CEO was established in 1987, prior to Jo-Anne assuming the position. Further, the Defendants claim that the historical practice of paying a bonus pre-dates Jo-Anne's tenure as CEO and that the decision to pay a total compensation package to the CEO was first initiated by Kennedy Co. in 1990. Thus, according to the Defendants, claims to recover alleged excessive compensation paid to Jo-Anne Kennedy accrued more than ten years prior to the filing of the complaint and should be barred by the ten-year statute of limitations.
The Complaint alleges, however, that it is the "annual compensation" computed and paid to Jo-Anne Kennedy that has been excessive. Therefore any claim that the corporation paid Jo-Anne excessive compensation is a claim that accrued separately each year, since her compensation was determined and paid on an annual basis for each fiscal year. See Verified Complaint ¶ 19; John J. Lynch Aff. ¶ 7.[1]
Accordingly, since the complaint was filed on June 20, 2003, any compensation which was paid to Jo-Anne Kennedy for any fiscal year that was completed prior to June 20, 1993 would be considered compensation which was paid on account of services rendered more than ten years prior to the filing of the complaint Any claim seeking to characterize such compensation as excessive must be deemed to have accrued more than ten years prior to the filing of the Complaint, and is barred by the applicable period of limitation. For the reasons stated herein, claims for excessive compensation paid to Jo-Anne Kennedy after June 20, 1993 are not barred by the applicable period of limitation.
Laches
The Defendants next argue that Count III is barred by the doctrine of laches, pointing out that fifteen years have lapsed between the time Jo-Anne Kennedy first received compensation from Kennedy Co. and the time Plaintiff brought this action. Laches is "an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant." O'Reilly v. Town of Gloucester,621 A.2d 697, 702 (R.I. 1993) (citing Fitzgerald v. O'Connell,120 R.I. 240, 245, 386 A.2d 1384, 1387 (1978)). Courts must use a two-part test in applying the defense of laches: (1) there must be negligence on the part of the plaintiff that leads to the delay in the prosecution of the case; (2) this delay must cause prejudice to the defendant. O'Reilly, 621 A.2d at 702 (citing Fitzgerald, 120 R.I. at 245,386 A.2d at 1387)). Mere delay in asserting a right does not by itself constitute laches. See Adams v. Adams, 624 A.2d 1093, 1096 (R.I. 1993). Whether the plaintiffs are guilty of laches is a question of fact.Fitzgerald, 120 R.I. at 245, 386 A.2d at 1388 (citing Nickerson v. Cass,93 R.I. 495, 177 A.2d 384 (1962)).
In opposing summary judgment as to Count III, the Plaintiff makes a blanket statement that "the passage of time did not result from negligence on the part of the Lynches." Rather, Plaintiff suggests that the delay in filing the claim resulted from misrepresentation and active concealment. For the reasons earlier stated, the Court cannot accept such a blanket conclusion, since other means were available to the Plaintiff as a minority shareholder to obtain the compensation information relative to Jo-Anne Kennedy.
However, even if delay by the Plaintiff was the result of negligence, an issue the Court need not resolve at the present time, for purposes of summary judgment the Defendants have not, by way of affidavit or otherwise, established that the delay has caused prejudice. Prejudice must be proven and cannot be inferred from the mere passage of time in the assertion of a claim. See Berthiaume v. School Comm. of City ofWoonsocket, 397 A.2d 889, 894, 121 R.I. 243, 250 (1979) (stating that "the mere passage of time is insufficient to invoke the defense of laches; what is crucial are the changes brought about by the passage of time"). Accordingly, since the absence of genuine issues of material fact has not been supported by the Defendants' motion, the Defendants are not entitled to summary judgment as to Count III based on the defense of laches.
The Business Judgment Rule
The Defendants further contend that they are entitled to summary judgment as to Count III of the verified complaint because the presumptions of the business judgment rule insulate from judicial scrutiny the decision of the Corporation's Board of Directors to approve Jo-Anne Kennedy's total compensation package. The business judgment rule has been adopted in Rhode Island; however, it has received minimal treatment by our Courts. See Heritage Healthcare Services, Inc. v. The Beacon MutualIns. Co., C.A. No. 02-7016, 2004 R.I. Super. LEXIS 29, *16 (R.I. Super. Jan. 21, 2004) (citing Meyer v. Jewish Home for the Aged of RhodeIsland, C.A. No. 93-5374, 1994 R.I. Super. LEXIS 42, *42-43 (R.I. Super. 1994) (following Oberly v. Kirby, 592 A.2d 445, 462 (Del. 1991)). This Court, therefore, will turn to Delaware law for guidance and support when considering corporate law issues, such as the business judgment rule, that have yet to be fully developed in this jurisdiction. See Id (citingBove v. Comm. Hotel Corp., 105 R.I. 36, 42, 249 A.2d 89, 93 (R.I. 1969)).
The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, Del. Supr., 473 A.2d 805,812 (1984). This presumption, which protects a board-approved transaction, can only be claimed by disinterested directors — meaning "that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." Id. If the transaction at issue is an "interested" director transaction, the business judgment rule will be rendered inapplicable. Id. When, however, the business judgment rule does apply, directors will be protected from liability, and the party challenging the transaction has the burden of rebutting the presumption.Id.
It is axiomatic, however, that if a business decision is not a "board approved transaction," then such decision cannot be insulated by the business judgment rule because application of the rule requires in the first instance that the decision at issue be properly considered by the board of directors. At this stage of the litigation, the Plaintiff has raised a genuine issue of material fact as to whether the Board, either by direct vote or ratification, ever passed judgment on the amount of compensation to be paid to Jo-Anne Kennedy. Without first resolving that threshold question, it would be premature to reach the question of the applicability of the presumption created by the business judgment rule. Accordingly, on the current state of the record, the business judgment rule does not entitle Defendants to judgment as a matter of law as to Count III.
Quasi-Contract
Lastly, the Defendants contend that the Plaintiffs are barred from recovering compensation paid to Jo-Anne based on the doctrine of quasi-contract. Quasi-contractual liability is based upon the equitable principal that one shall not be permitted to be unjustly enriched at the expense of another or to receive property or benefits without providing compensation. R B Electric Co., Inc. v. Amco Construction Co., Inc.,471 A.2d 1351, 1355 (R.I. 1984) (citations omitted). Recovery in quasi-contract requires that a plaintiff prove three elements: (1) a benefit must be conferred upon the defendant by the plaintiff; (2) the defendant appreciated the benefit; and (3) there must be an acceptance of the benefit under the circumstances that it would be inequitable for the defendant to retain such benefit without the payment and value thereof.Fondedile S.A. v. C.E. McGuire, Inc., 610 A.2d 87, 97 (R.I. 1992) (quoting Hurdis Realty, Inc. v. Town of North Providence, 121, R.I. 275, 278, 397 A.2d. 896, 897 (1979); Baily v. West, 105 R.I. 61, 67,249 A.2d 414, 417 (1967)). In quasi-contract cases, the obligation to pay "arises not from consent of the parties, as in the case of contracts, express or implied in fact, but from the law of natural immutable justice and equity." Fondedile S.A., 610 A.2d at 97 (quoting Hurdis Realty,121 R.I. at 278, 397 A.2d at 897).
According to the Defendants, Jo-Anne conferred a benefit to Kennedy Co. by faithfully serving and guiding the Company to success, and it would be against the principals of equity if Jo-Anne were forced to forfeit compensation received from the Corporation. The Plaintiffs agree that Jo-Anne Kennedy should be compensated for the reasonable value of her services. However, they have offered evidence suggesting that Jo-Anne's annual compensation grossly exceeded the industry averages set forth by the Petroleum Equipment Institute (PEI), thereby leaving the value of Jo-Anne's services in dispute. See John J. Lynch Aff. ¶¶ 5-8.[2]
To the extent that quasi-contract can be raised as a defense, the relevant inquiries — here, the benefits conferred upon the Company by Jo-Anne and the reasonable value of such services to the Company — are fact intensive. The Defendants have not demonstrated the absence of genuine issues of material fact as to the reasonableness of the compensation paid and, therefore, this issue cannot be resolved by way of motion for summary judgment.
 CONCLUSION
Based upon the foregoing analysis, the Court deems it appropriate to grant the Defendants' motion for partial summary judgment as to Count III for compensation paid to Jo-Anne Kennedy prior to June 20, 1993. Genuine issues of material fact preclude granting summary judgment as to the claims contained in Count III for compensation paid to Jo-Anne Kennedy on or after June 20, 1993.
The parties will present the Court with an order consistent with this decision.
[1] In fact, the Defendants' motion for summary judgment asks the Court to consider the compensation paid to Jo-Anne Kennedy reasonable as a matter of law, in that the compensation paid to the CEO bears a reasonable relation to a percentage of annual gross sales, an amount that clearly varies each year.
[2] PEI is a national trade association for businesses involved in the distribution of petroleum equipment that publishes surveys of annual compensation of executives and employees of member companies, such as Kennedy Co. See John J. Lynch Aff. ¶¶ 5-8.