DECISION
Before this Court are cross-motions for summary judgment by the Town of Johnston (the Town) and Robinson Design Inc. (the Plaintiff) in this action for breach of contract and quasi-contract involving an architectural design fee for a new senior center in the Town. Both parties filed timely objections. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
The material facts are undisputed. In 2000, the Town began planning the new senior center. In a letter to the Town's mayor, Mayor Macera (the Mayor), dated September 18, 2002, the Plaintiff proposed to prepare the architectural designs for the senior center. (Compl. Ex. A.) The Plaintiff's letter stated: "[o]ur proposed fee for the final design services . . . is 6.25% of the probable cost of construction. At this time this cost is ($2,000,000), [sic] therefore the fee would be $125,000. Should the project value change; [sic] this fee amount would be adjusted to reflect the final costs." (Compl. Ex. *Page 2 
A.) The Mayor signed his name at the end of the letter above language that read "Authorization to Proceed" on November 25, 2002. (Compl. Ex. A.)
At some time thereafter, the Town received construction bids, which came in at approximately $4.2 million — more than double the cost that the Plaintiff had originally projected. Due to the increase in the estimated construction cost of the senior center, the Plaintiff notified the Town that the fee for the architectural design would be increased from $125,000 (6.25% of $2 million) to $261,250 (roughly 6.25% of $4.2 million). Over time, the Town has paid the Plaintiff approximately $177,000 for the design services. The Plaintiff contends that the Town still owes a balance of approximately $83,000. Ultimately, the Town decided not to build the senior center because of prohibitive costs.
 II Standard of Review
Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." Super. R. Civ. P. 56(c). The court "does not pass upon the weight or the credibility of the evidence," but instead it must consider the evidence "in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317, 320
(R.I. 1992). The court's role at this stage is only to identify pertinent factual disputes, and not to resolve those disputes.Rotelli v. Catanzaro, 686 A.2d 91 (R.I. 1996). For that reason, summary judgment is a remedy that should be cautiously applied. Id. However, "[i]f there are no material facts in dispute, the case is ripe for summary judgment." Richard v. Blue Cross Blue Shield, 604 A.2d 1260,1261 (R.I. 1992). *Page 3 
 III Discussion A. Express Contract
The Plaintiff contends that it entered into an express, written contract with the Town to prepare architectural design plans for the senior center when the Mayor signed the Plaintiff's proposal letter. The Town argues that it is not bound by the terms of the proposal letter because the Mayor cannot unilaterally bind the Town without the town council's approval.
Section 4-6 of the Town's Charter states:
 The mayor shall be the chief executive and administrative officer of the town and shall be responsible for the administration of all departments, offices and agencies except as otherwise provided by this Charter. To accomplish purpose [sic] he shall: . . . (6) Negotiate contracts on behalf of the town with the approval of the town council, which contracts are in accord with the provisions of this Charter. . . .
"[W]hen construing a municipal charter, the usual rules of statutory construction apply." Stewart v. Sheppard, 885 A.2d 715, 720 (R.I. 2005) (citations omitted); Kells v. Town of Lincoln, 874 A.2d 204, 210 (R.I. 2005) (citations omitted). "It is the accepted rule that the provisions of [town] charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question." Stewart, 885 A.2d at 720. However, "when the language of the statute is clear and unambiguous, the court must interpret it literally, giving the words of the statute their plain and ordinary meanings."Id.
Here, the Court finds that the pertinent section of the charter is "clear and unambiguous." The Mayor may enter into binding contracts on behalf of the Town only *Page 4 
with the consent of the town council. There is no evidence before this Court that the town council ever consented to the contract. The Court refuses to read the charter provisions as granting the mayor more authority than what is clearly granted to him in § 4-6.
Furthermore, contracts with municipalities are governed by the same rules as other contracts. Capital Props., Inc. v. State, 749 A.2d 1069,1082 (R.I. 1999). "It is a well-settled principle that a municipal employee cannot bind the city without possessing the actual authority to do so." Tidewater Realty, LLC v. State, 942 A.2d 986, 995 (R.I. 2008) (citations omitted); see also Casa DiMario, Inc. v. Richardson,763 A.2d 607, 610 (R.I. 2000) (quoting Warwick Teachers' Union Local No. 915 v.Warwick Sch. Comm., 624 A.2d 849, 850-51 (R.I. 1993)) (finding town solicitor lacked actual authority to settle law suit against the town). Here, the Mayor, as agent, did not possess actual authority to bind the Town, as principal, because the Town's charter required that the Mayor obtain the consent of the town council. Accordingly, there was no enforceable express contract between the parties. As there is no genuine issue of material fact, and the Town is entitled to judgment as a matter of law, the Town's motion for summary judgment is granted.
 B Quasi-Contract
The Plaintiff also contends that the Town is liable to the Plaintiff for quantum meruit damages under a theory of quasi-contract.[1] The Town argues that it does not owe the Plaintiff any more money because the Plaintiff essentially reused the same design that it had created for South Kingstown's senior center. The Town also points out that most *Page 5 
jurisdictions do not allow recovery at all against municipalities on a theory of implied contract where a charter provision restricts the method of contracting.
A majority of jurisdictions categorically prohibits parties from recovering quantum meruit damages against municipalities on a theory of quasi-contract. As explained by a leading commentator on municipal corporations:
 [t]he prevailing rule undoubtedly is that if the powers of a municipality or its agents are subjected by statute or charter to restrictions as to the form and method of contracting which limit the power itself, the corporation cannot be held liable by either an express or an implied contract in defiance of such restrictions. The theory on which these cases are decided is that if any substantial or practical results are to be achieved by the statutory or charter restrictions upon the powers of municipal officers or boards to incur liabilities, no recovery on an implied contract can be allowed, even though there may be apparent injustice in some cases in adhering strictly to statutes or charter provisions. The purpose behind the rule is to protect the public. It is better that an individual should suffer from the mistakes of public officers or agents, than to adopt a rule which, through improper combination or collusion, could be detrimental or injurious to the public. When a municipality goes beyond the law, the persons who deal with it do so at their own risk. 10 Eugene McQuillin, The Law of Municipal Corporations § 29.26 (3d ed., rev. vol. 1999).
Under Rhode Island law, in order to determine whether quantum meruit damages will be awarded against a municipality, this Court must distinguish between two types of situations:
 [1] where a municipality is acting within its general corporate powers, but the particular act is void on account of some defect in the execution of the power and [2] a case where the act in question is void because it is entirely beyond its corporate powers under any circumstances. In cases of the former class, the municipality is generally held liable for such benefits as it may have received in the course of the transaction, while, in cases of the latter class, *Page 6 
no recovery is permitted from the municipality for the value of benefits received. Newport Hosp. v. Ward, 56 R.I. 45, 59, 183 A. 571, 577 (1936) (citations omitted); see also Capital Props., 749 A.2d at 1083.
Based on the foregoing language, it appears that Rhode Island does not follow the prevailing rule, but allows recovery of quantum meruit damages against a municipality under the theory of implied contract where the municipality is acting within its general corporate powers.See also Hurdis Realty, Inc. v. Town of N. Providence, 121 R.I. 275,397 A.2d 896 (1979) ("A municipality, no less than a private individual, may be liable upon the principle of unjust enrichment when it has enjoyed the benefit of work performed and when no statute forbids or limits its power to contract therefore."). The following excerpt explains this rule:
 [I]n some cases where there is a charter provision . . . prescribing the method by which an officer . . . of a municipal corporation may bind the municipality by contract, that method must be followed, and there can be no implied contract or implied liability of the municipal corporation under such circumstances. There is considerable authority, however, to support the rule that a recovery may be allowed in such cases, upon the theory that it is not justice, where a contract is entered into between a municipality and another, in good faith, and the corporation has received benefits, to permit the municipality to retain the benefits without paying their reasonable value, the same as a private corporation or individual would have to do. 10A Eugene McQuillin, The Law of Municipal Corporations § 29.112 (3d ed., rev. vol. 1999) (footnotes omitted).
Here, it clearly would be within the Town's general corporate powers to contract for architectural services. However, due to a defect in the execution — namely, the Mayor never received the town council's approval — the contract was void. Accordingly, the *Page 7 
Town may be liable for quantum meruit damages if the Plaintiff establishes the elements of quasi-contract.
Under Rhode Island law, "[t]o recover on an action in quantum meruit, it must be shown that the owner derived some benefit from the services and would be unjustly enriched without making compensation therefor."Nat'l Chain Co. v. Campbell, 487 A.2d 132, 135 (R.I. 1985) (citingMontes v. Naismith Trevino Constr. Co., 459 S.W.2d 691, 694
(Tex.Civ.App. 1970)); see also Landi v. Arkules, 835 P.2d 458, 467
(Ariz.Ct.App. 1992) ("`Quantum meruit' is the measure of damages imposed when a party prevails on the equitable claim of unjust enrichment."). Therefore, to recover quantum meruit damages, a party must first satisfy the elements of unjust enrichment.
The elements of unjust enrichment are the same as the elements for quasi-contract and are as follows: "(1) the plaintiff conferred a benefit upon the defendant, (2) the defendant appreciated the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain such benefit without payment of the value thereof."Hurdis Realty, 121 R.I. at 278, 397 A.2d at 897 (citing Bailey v.West, 105 R.I. 61, 249 A.2d 414 (1969)); see also Narragansett Elec. Co.v. Carbone, 898 A.2d 87, 99 (R.I. 2006) (citing Bouchard v. Price,694 A.2d 670, 673 (R.I. 1997)).
Here, the Plaintiff did not allege the elements of an unjust enrichment claim in its complaint, but alleged that it was owed damages for services rendered. The Plaintiff's memorandum asserts that it is owed quantum meruit damages. There is no evidence in the record that the Town (1) benefited in any way from the design plans prepared by the plaintiff, or (2) retained any alleged benefit. See, e.g., Wing v. Townof Landis, 599 S.E.2d 431 (N.C.Ct.App. 2004) (finding that no benefit inured to the town from *Page 8 
engineering plans prepared for a water line extension where the water lines were never built); W. Corr. Group, Inc. v. Tierney, 96 P.3d 1070
(Ariz.Ct.App. 2004) (finding that the county did not retain any benefit where the county returned the plans, cancelled the construction projects, and never built the proposed facilities). The Town never built the new senior center. Based on the evidence before this Court, it is unclear whether the Town has retained the design plan in its possession. The record before the Court does not establish presently that the Plaintiff has conferred any benefit upon the Town, that the Town appreciated such benefit, or that it would be inequitable for the Town to retain such benefit. Furthermore, considering that the parties dispute the reasonable value, if any, of the design services, the Court must deny the Plaintiff's motion for summary judgment.
 IV Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, this Court grants the Town's motion for summary judgment with respect to Count I (breach of contract claim). This Court denies the Town's motion for summary judgment with respect to Counts II and III (quasi-contract claim). This Court denies the Plaintiff's motion for summary judgment with respect to all counts.
The Town shall present an order consistent herewith which shall be settled after due notice to and an opportunity to be heard by the Plaintiff's counsel.
[1] For the purposes of this decision, the terms "quasi-contract," "implied-in-law contract," and "implied contract" are synonymous.